616 A.2d 623

Melvin LEVINE and Fay Levine, Appellees,

v.

Marvin I. ROSEN, M.D., Appellant.

Supreme Court of Pennsylvania.

Argued Dec. 4, 1991.

Decided Nov. 13, 1992.

514

Audrey L. Jacobsen, Charles W. Craven, Philadelphia, for appellant.

Peter J. Hoffman, Marybeth S. Christiansen, Donald J. Brooks, Philadelphia, for amicus Pa. Med. Society.

Alan H. Gordon, Philadelphia, for amicus Pa. Trial Lawyers.

Christopher Mattson, Lancaster, for amicus Pa. Defense Inst.

Charles S. Lieberman, Melissa Lang, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

ZAPPALA, Justice.

This case presents two issues for our review. First, whether the trial court erred in instructing the jury about the reporting requirements of the *Health Care Quality Improvement Act of 1986*, 42 U.S.C. § 11101 *et seq.* (hereinafter "the Health Care Act"). Second, whether the trial court erred in its instruction concerning the "two schools of thought" doctrine.

Mr. and Mrs. Levine filed suit against Dr. Rosen for his failure to diagnose breast cancer. Mrs. Levine testified that she had been a patient of Dr. Rosen for approximately nineteen years, when she went to visit his office on July 25, 1980, due to her complaint that the right nipple had become discolored and inverted. According to Mrs. Levine's testimony, Dr. Rosen assured her that she was fine and did not order any diagnostic tests such as mammography or a biopsy.

Mrs. Levine testified that on October 20, 1981, she returned to Dr. Rosen, who examined her and again reported that she was fine, despite her continuing complaints about the right nipple. Dr. Rosen did not order any diagnostic tests during that visit. On December 30, 1981, Mrs. Levine took it upon herself to have a mammogram performed, which revealed a mass in her right breast indicative of adenocarcinoma. A biopsy performed a week later revealed a diagnosis of infiltrating and moderately to poorly differentiated duct carcinoma of the right breast. It was also determined that four out of twenty-four lymph nodes were involved. On January 15, 1982, Mrs. Levine underwent a right modified radical mastectomy and was treated with chemotherapy for approximately one year.

Mrs. Levine's expert testified that due to the symptoms with which Mrs. Levine presented to Dr. Rosen in July and October of 1981, Dr. Rosen's failure to refer Mrs. Levine for a mammography constituted a deviation from accepted medical standards of care. He further testified that had she received an earlier mammogram, there was an increased chance that

her four lymph nodes would not have been involved. The involvement of the lymph nodes increased the risk that cancer would recur. Mrs. Levine's expert testified further that Dr. Rosen was negligent for not ordering a mammogram every year after Mrs. Levine reached her 50th birthday, according to the American Cancer Society recommendations.

Dr. Rosen, however, testified that Mrs. Levine did not report the discolored and inverted right nipple on either July 25, 1980 or on October 20, 1981. There was no indication of any such complaints in his medical records.

His expert testified further that according to the American College of Obstetrics and Gynecology, only "regular," as opposed to yearly, mammograms were required. He defined regular to mean within the physician's discretion.

The jury returned a unanimous verdict finding Dr. Rosen not negligent. On appeal, the Superior Court reversed, holding that (1) the "irrelevant considerations" instruction was improper; and (2) the trial court erred in its "two schools of thought" instruction. 394 Pa.Super. 178, 575 A.2d 579 (1990). We agree.

### THE "IRRELEVANT CONSIDERATIONS" INSTRUCTION

We first address the propriety of the so-called "irrelevant considerations" instruction. Pennsylvania Suggested Standard Jury Instruction 10.07 provides as follows:

A medical malpractice case is a civil action for damages and nothing more. The sole issue is whether the plaintiff has suffered injuries as the result of the defendant's negligence, and is thus entitled to monetary compensation for those injuries. The case does not involve punishment of the defendant, or even criticism of his professional abilities, beyond the facts of this matter. The claim does not involve the defendant's reputation, his medical practice, or his rights as a licensed physician. Therefore, no thought should be given to these irrelevant considerations in reaching a verdict in the case.

The trial court in this case instructed the jury using the exact language from the proposed instruction. Upon Rosen's objection, the trial court gave a supplemental charge to the jury which took into account the effect of the Health Care Act's reporting requirement. He stated:

In addition to some of the rules where I indicated to you the irrelevant considerations in the areas you need to weigh, all the way from the burden of proof, each individual factor relates to who carries that burden, the Comparative Negligence Act, the considerations of the fact that the damages need not consider what professional—how the profession looks at the professional individuals.

I should also tell you that the professional individual, just like the court, is a public court, and anything here can be available to the public.

He also has the obligation to report to a licensing board the results of this case and the circumstances relating to it.

The Superior Court found that giving this supplemental charge was error, stating "[t]he change in federal law is entirely irrelevant to the merits of this medical malpractice action. It has no bearing on the appellee's negligence or liability." The Superior Court went on to hold that:

The additional charge may have induced the jury to consider matters which were irrelevant to the merits of this action. This constituted a fundamental error in the instructions. These irrelevant considerations may have contributed to the verdict. Accordingly, we must reverse the judgment of the trial court and remand for a new trial.

Dr. Rosen asserts that the supplemental charge to the jury was necessary to accurately instruct the jury on the federal reporting requirements under the Health Care Act. The Act imposes a requirement on entities making a payment under a policy of insurance, self-insurance, or otherwise, in settlement or satisfaction of a medical malpractice action or claim to report information relating to such payment. 42 U.S.C.A. § 11131. The information to be reported includes (1) the name of the physician or health care practitioner for whose benefit the payment is made, (2) the amount of the payment,

(3) the name of any hospital with which the physician or practitioner is affiliated, (4) a description of the acts or omissions and injuries forming the basis of the claim, and (5) other information as determined by the Secretary of Health and Human Services. 42 U.S.C.A. § 11131(b).

Dr. Rosen's assertion that the irrelevant considerations charge must be supplemented with an instruction on the federal reporting requirement under the Act is erroneous. The assertion is erroneous because it presumes that the irrelevant considerations charge is intended to inform the jury that the malpractice claim does not affect the defendant's reputation, practice, or license. That is not the purpose of the instruction.

The purpose of the instruction is to explain to the jurors that they may not consider the effect, if any, that a verdict may have on the defendant's reputation, practice, or license. It simply does not matter whether the defendant's reputation, practice, or license is or is not affected. The only issue properly before the jury is whether the defendant was negligent. The defendant may be found negligent whether the verdict has no effect on his reputation, practice, or license, or if the verdict has a drastic impact.

A malpractice claim questions whether the defendant's professional conduct fell below the proper standard of care. A defendant who is negligent is no less liable for the malpractice claim if he is required to comply with the federal reporting requirement than if no requirement existed. The imposition of the reporting requirement is absolutely irrelevant to a jury's consideration of whether a defendant has committed malpractice.

We agree with the Superior Court that the instruction, as given, may have influenced the outcome of the verdict. For that reason, we affirm the decision of the Superior Court and remand the case for a new trial.

## THE TWO SCHOOLS OF THOUGHT DOCTRINE

In our recent decision in *Jones v. Chidester*, 531 Pa. 31, 610 A.2d 964 (1992), we reexamined the "two schools of

thought" doctrine in the context of the appropriate instruction to be given to a jury. The "two schools of thought" doctrine provides a complete defense to a malpractice claim when the prescribed medical treatment or procedure has been approved by one group of medical experts even though an alternate group recommends another approach, or the experts agree that alternative treatments or procedures are acceptable. The doctrine is applicable only where there is more than one accepted method of treatment or procedure.

■ Prior to our decision in *Jones v. Chidester*, the existing case law had created confusion as to the test to determine whether a school of thought qualifies as such. We granted allocatur to decide whether a school of thought may be recognized when it is advocated by a "considerable number" of medical experts, a quantitative analysis, or when it commands acceptance by "respected, reputable and reasonable" practitioners, a qualitative analysis. We held that there must be a considerable number of physicians, recognized and respected in their field, sufficient to create another "school of thought". This blend of the quantitative and qualitative analyses insures not only that a school of thought is adopted by reputable and respected physicians, but also that it reflects the general acceptance of medical authorities. We stated the following as a correct statement of the law:

> Where competent medical authority is divided, a physician will not be held responsible if in the exercise of his judgment he followed a course of treatment advocated by a considerable number of recognized and respected professionals in his given area of expertise.

*Jones v. Chidester*, 531 Pa. at 40, 610 A.2d at 969.

■ In this case, there was evidence that Dr. Rosen was negligent in: (1) failing to diagnose breast cancer from the physical symptoms presented to him; *i.e.*, the inverted and discolored nipple; and (2) failing to order a yearly mammogram. There was no evidence that there were "two schools of thought" concerning the negligent diagnosis from the physical symptoms. In fact, there was agreement that if a nipple became suddenly inverted and discolored, it was indicative of

the need for further testing. However, the issue was whether Mrs. Levine actually reported the symptoms to Dr. Rosen as she claimed. Thus, the issue in that regard was one of credibility. Either the jury believed Mrs. Levine or they believed Dr. Rosen. Thus, the "two schools of thought" instruction was inappropriate for that aspect of the claimed negligence.

With respect to whether the doctor should have ordered a yearly mammogram, Mrs. Levine introduced evidence that the American Cancer Society recommended a yearly test for women over fifty years of age. The defendant introduced evidence that the American College of Obstetricians and Gynecologists recommended that mammography be performed "regularly" for that same group of women.

Unquestionably, the evidence established that there were a considerable number of respected physicians who subscribed to each school of thought—regular vs. yearly mammograms.[1] The instruction of the trial court provided as follows:

A physician may rightfully choose to practice his profession in accordance with a school of thought which differs in its concept and procedures from another school of thought. Even though the school that he follows is a minority one, he will not be deemed to be negligent or practicing improperly, so long as it is reputable and respected by reasonable medical experts.

On remand, the trial court should instruct the jury on this issue consistent with our decision in *Jones v. Chidester*. However, the error upon which we reverse the case is the one raised by the Superior Court.[2] The Superior Court found that

1. It should be noted that the events in question took place in 1981 and that the standard was for that year.

2. There is a viable argument that Mrs. Levine waived the "two schools of thought" issue, by objecting only that there was insufficient evidence to warrant the "two schools of thought" instruction. Despite that fact, the Superior Court addressed the propriety of the instruction itself, and, since we disagree with the language approved of by the Superior Court, we believe that it is important for us to address the issue. Further, since we have remanded the case on the first issue, we believe princi-

the instruction in question did not specifically delineate between the alleged negligent failure to diagnose and the negligent failure to order a yearly mammography; the latter allegation of negligence being the only one for which Dr. Rosen was entitled to the "two schools of thought" instruction. We agree. Upon retrial, the trial judge should specify on which allegation of negligence there were two schools of thought. As the Superior Court correctly remarked, "The two schools of thought doctrine does not relieve a doctor from liability for failure to recognize symptoms of an illness." Thus, on the first claim of negligence, for the jury to find Dr. Rosen not liable, they must not believe that Mrs. Levine reported the symptoms as she claimed. On the second claim of negligence, Dr. Rosen would be entitled to the "two schools of thought" instruction, assuming introduction of the same evidence.

Based upon the foregoing, we affirm the decision of the Superior Court and remand the case to the trial court for retrial in accordance with this opinion.

Affirmed.

McDERMOTT, J., did not participate in the decision of this case.

ples of judicial economy require us to provide guidance on the second issue.