691 A.2d 950

**Ona NOGOWSKI, Appellee,**

v.

**Saeid ALEMO–HAMMAD, M.D. and St. Mary Hospital.**

**Appeal of Saeid ALEMO–HAMMAD, M.D., Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 26, 1996.

Filed March 31, 1997.

Francis J. McGovern, Blue Bell, for appellant.

Angela L. Dumm, Philadelphia, for Nogowski, appellee.

Before CAVANAUGH, J., CIRILLO, P.J.E., and POPOVICH, JOHNSON, HUDOCK, FORD ELLIOTT, SAYLOR, EAKIN and SCHILLER, JJ.

SCHILLER, Judge.

Appellant, Dr. Saeid Alemo–Hammad, brings this appeal from an Order of the Court of Common Pleas of Philadelphia County granting a new trial. We reverse and remand for further proceedings.

FACTS:

On February 12, 1986, appellant performed back surgery, specifically a laminectomy, on appellee, Ona Nogowski. During the course of the surgery appellant placed surgical sponges within appellee's body. Appellant testified that at the conclusion of the surgery he was responsible for the removal of the sponges. However, due to a miscount one sponge remained in appellee's body after the surgical incision was closed. Ms. Nogowski complained of pain following the surgery. After some time, the sponge was discovered and removed; the removal required an additional surgical procedure. Ultimately, Ms. Nogowski initiated suit against appellant and St. Mary Hospital (where the surgery took place). The matter was tried before a jury in the Court of Common Pleas of

Philadelphia County during the month of March, 1995. At the close of the trial the attorneys jointly requested the trial court to use a jury slip which they had drafted, and the trial court granted their request. Utilizing that slip the jury returned the following verdict:

## JURY VERDICT SLIP

1. Was St. Mary's Hospital negligent?
   Yes___X___                    No_____

If you answered "Yes" to No. 1, go on to Question No. 2. If you answered "No" to No. 1, skip No. 2 and respond next to Question No. 3.

2. Was the negligence of St. Mary's Hospital a substantial factor in causing injury to the plaintiff?
   Yes___X___                    No_____

3. Was Dr. Saeid Alemo–Hammad negligent?
   Yes___X___                    No_____

If you answered "Yes" to Question No. 3, please respond Question No. 4. If you answered "No", please answer Question No. 5 next.

4. Was the negligence of Saeid Alemo–Hammad a substantial factor in causing injury to the plaintiff?
   Yes_____                    No___X___

5. Did Dr. Saeid Alemo–Hammad fail to obtain proper informed consent from the plaintiff?
   Yes_____                    No___X___

6. What percentages of negligence do you attribute to each defendant?

| | |
|---|---|
| St. Mary's Hospital | 70% |
| Saeid Alemo–Hammad | 30% |
| TOTAL | 100% |

7. In what amount do you find damages suffered by Ona Nogowski?

$150,000.00

After the foreperson read the above verdict into the record the judge discharged the jury. Then the following colloquy transpired:

| | |
|---|---|
| **THE COURT:** | Alright. What it appears in a 70/30 verdict out of $150,000, is probably 45,000; is it not? Thirty percent of $150,000 |
| **DEFENSE COUNSEL:** | Did I hear correctly that they answered "No" to number four? |
| **THE COURT:** | He was held responsible for informed consent, not on negligence. |
| **DEFENSE COUNSEL:** | I thought he answered "No" to number five. |
| **PLAINTIFF'S COUNSEL:** | Did he give informed consent? No. |
| **THE CRIER:** | Did he fail to give informed consent? No. |
| **THE COURT:** | You're right. I don't know what they meant. May have grounds for a new trial. Were they negligent? Yes. Was it a substantial factor? Yes. Was he negligent? Yes. Was his negligence substantial factor? No. Did he fail to obtain? No. He is responsible. |
| | The counsel wrote this together. Did Dr. Saeid Alemo–Hammad fail to obtain proper informed consent from the plaintiff? No. You're right. Because if it was yes, he'd be responsible. I don't understand how they made him responsible for thirty percent; it's an inconsistent verdict. |
| **PLAINTIFF'S COUNSEL:** | I don't either. |
| **THE COURT:** | We have a percentage here. They percentagized it. Well, unfortunately—I don't know wheth- |

er we should grab them, you may
have gotten yourself a new trial.
It is not a consistent verdict. It
can't have a defense verdict where
they put a percentage down[1]. . . .
Well, it will be part of post verdict
motions if I cannot get them back.

N.T. March 10, 1995, pp. 174–77. The trial court attempted to reconvene the jury to obtain a clarification, but was unsuccessful. Court was ultimately adjourned, with the understanding that this inconsistency would be one of the issues to be resolved during post-trial motions.

Both parties filed post-trial motions, with appellant seeking a molding of the verdict, judgment notwithstanding the verdict, and in the alternative a new trial. Appellee sought similar relief: obviously seeking a verdict in her favor on the issue of molding and judgment notwithstanding the verdict. The trial judge construed both parties' requests as essentially seeking the same relief, which she interpreted as a request for a new trial.[2] As such, the court did not address the alternative claims of the parties. From this order, appellant brought this appeal.[3]

DISCUSSION:

Appellant now phrases five issues for our review, which we set out in the order we have chosen to address them: (1) whether appellee waived any challenge to the verdict; (2)

---

1. We note that the trial court did instruct the jury prior to their deliberations on what they should do at question 6 if only one defendant was found negligent: "It must total one hundred percent. Obviously if you only found one defendant responsible put a zero in the blank, and one hundred percent in the other blank." N.T. March 10, 1995, 164.

2. The trial court's rationale was contained in the following statement: "Because both parties requested a new trial as alternative relief, we granted same on July 17, 1995." Slip opinion, *Ona Nogowski v. Saeid Alemo–Hammad*, Court of Common Pleas of Philadelphia County, No. 1555, p. 2 (October 19, 1995).

3. We wish to emphasize that only Dr. Alemo–Hammad filed an appeal. No cross-appeal was filed. Consequently, appellee's claims that she was entitled to a new trial because the trial court erred in granting a two schools of thought instruction or because the court erred in refusing to give a *res ipsa loquitur* charge are not before this court.

whether the trial court erred in adjudicating defense counsel in contempt of court and imposing a sanction of $500 due to the tardiness of a defense witness; (3) whether the trial court erred in refusing to address appellant's request for judgment notwithstanding the verdict; (4) whether appellant was entitled to judgment notwithstanding the verdict; and (5) whether the trial court erred in limiting the new trial to the issue of liability only.

■ The decision to order a new trial is one that lies within the discretion of the trial court. *Coker v. S.M. Flickinger Co. Inc.*, 533 Pa. 441, 625 A.2d 1181 (1993). On appeal, our scope of review is limited to those reasons upon which the trial court relied: we consider whether any of the trial court's reasons for granting a new trial have merit and if so, defer to that decision. *Picca v. Kriner*, 435 Pa.Super. 297, 645 A.2d 868 (1994). "Because the trial court is uniquely qualified to evaluate factual matters, we will not disturb its decision absent an abuse of discretion or error of law." *Id.* at 299, 645 A.2d at 869.

■ Appellant's first two issues can be disposed of quickly. Regarding his first issue, the trial judge in her opinion refused to find that plaintiff-appellee had waived her right to challenge the verdict for two reasons: first, both parties were equally at fault for the confusing verdict slip;[4] and second, the judge specifically advised the parties that the jury inconsistency was a subject for post-trial motions as opposed to immediate discussion. Therefore, it was the trial judge's decision not to argue the issue immediately after the jury verdict was read. This latter decision by the Court was clearly the correct one given that the jury had been discharged and could not be reconstituted. We may also add that appellant's request to mold the verdict necessitated the same review as did appellee's and the trial judge's ruling, i.e. that the verdict slip was so confusing as to defy the entry of judgment, would have

4. This was not a case where the error harmed only one party and that party failed to object before the jury was discharged. *See Philadelphia Police Department v. Gray*, 534 Pa. 467, 633 A.2d 1090 (1993); *Picca v. Kriner*, 435 Pa.Super. 297, 645 A.2d 868 (1994).

been the same in ruling on appellant's request to mold the verdict. *See Chiaverini v. Sewickley Valley Hospital,* 409 Pa.Super. 630, 598 A.2d 1021 (1991), *alloc. denied,* 530 Pa. 659, 609 A.2d 167 (1992) (in a case with a similar jury verdict, new trial was warranted). Thus, appellant's waiver argument is not only meritless but superfluous.

■ Appellant's issue regarding the contempt citation and imposition of a sanction is waived because it was not raised in appellant's post-trial motions, as Pennsylvania Rule of Civil Procedure 227.1(b)(2) requires. Failure to preserve issues in a post-trial motion results in a waiver of that issue on appeal. *Weir By Gasper v. Estate of Ciao,* 521 Pa. 491, 556 A.2d 819 (1989); *Brindley v. Woodland Village Restaurant,* 438 Pa.Super. 385, 652 A.2d 865 (1995).

■ Appellant's third issue is directed to the decision by the trial court not to address appellant's alternative claim for relief in the nature of a judgment notwithstanding the verdict. The Rules of Civil Procedure clearly entitled appellant to seek alternative relief, and provide that a simultaneous request for a new trial is not a waiver of the request for judgment notwithstanding the verdict (a/k/a judgment n.o.v.).[5] Pa. R.Civ.P. 227.1(e) ("If a new trial and the entry of judgment are sought in the alternative, the court shall dispose of both requests.") (emphasis added). Therefore, appellant was entitled to have the trial court rule on his motion, and the failure of the trial court to do so constituted error. Ordinarily, the conclusion that a party was entitled to a court ruling which he did not otherwise receive would warrant a reversal. However, since the grant or denial of judgment n.o.v. raises a pure question of law, *Phillips v. A–Best Products Co.,* 542 Pa. 124, 665 A.2d 1167 (1995), this Court is in the position of being able

---

5. Pennsylvania Rule of Civil Procedure 227.1 allows any party to file post-trial motions, including a motion that the court "direct the entry of judgment in favor of any party." This rule replaces several previous post-trial motions, including the motion for judgment notwithstanding the verdict, which was traditionally labelled a motion for judgment *non obstante verdicto* (commonly referred to as a motion for judgment n.o.v).

to rule on the motion without the necessity of the trial court's decision.

Appellant next argues that the trial court erred in not granting him relief on his motion for judgment n.o.v. on the issues of malpractice and informed consent. Appellant argues that appellee did not produce sufficient evidence to allow the issues of malpractice and lack of informed consent to be decided by the jury.

■ There are two bases upon which a trial court can take the matter from the factfinder and enter judgment:

one, the movant is entitled to judgment as a matter of law, *Tremaine v. H.K. Mulford Co.,* 317 Pa. 97, 176 A. 212 (1935), and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant, *Cummings v. Borough of Nazareth,* 427 Pa. 14, 233 A.2d 874 (1967). With the first a court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Moure v. Raeuchle,* 529 Pa. 394, 402–03, 604 A.2d 1003, 1007 (1992).

■ In reviewing a motion for judgment n.o.v., the evidence must be viewed in the light most favorable to the verdict winner, who must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. *Id.* at 402, 604 A.2d at 1007. A judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. *Id.*

■ In order to establish a prima facie case of medical malpractice, a plaintiff must show: (1) a duty owed by the physician to the patient; (2) a breach of that duty; (3) that the breach of duty was the proximate cause of, or a substantial

factor in, bringing about the harm suffered by the patient; and (4) damages suffered by the patient that were a direct result of that harm. *Mitzelfelt v. Kamrin*, 526 Pa. 54, 62, 584 A.2d 888, 891 (1990); *Gregorio v. Zeluck*, 451 Pa.Super. 154, 158–60, 678 A.2d 810, 813 (1996).

In general, expert testimony is essential to proving malpractice: the plaintiff must provide expert testimony to establish, to a reasonable degree of medical certainty, that the acts of the physician deviated from acceptable medical standards, and that such deviation was a proximate cause of the harm suffered. *Mitzelfelt, supra,* at 62, 584 A.2d at 892; *Gregorio, supra,* at 158–60, 678 A.2d at 813. An exception to the requirement of expert testimony applies only where the physician's departure from acceptable medical standards is so obvious as to be within the comprehension of ordinary laypersons. *Gregorio, supra.*

At trial, the first witness to testify was the appellant, Dr. Alemo–Hammad, called by appellee as if on cross-examination. He stated that as the doctor performing the surgery, it was his and only his responsibility to place sponges in appellant's body and to remove them. He also stated that he performed a surgical sweep with his hands prior to closing the incision to detect any sponges remaining in the body, but that a sponge had remained in appellee's body due to a miscount. In addition, Dr. Andrew Newman, testifying on behalf of appellee, stated that appellee suffered pain and swelling as a result of the sponge being left inside her from the surgery, and that this was the sole reason that a second surgery was required. He testified that the person ultimately responsible for removing the sponges was the surgeon. When asked if it was appropriate to leave a sponge in the patient, Dr. Newman answered: "It is never appropriate to allow a sponge to remain in any body cavity or underneath the skin permanently." N.T. December 13, 1993, 26–27.[6] He added that a

---

**6.** Dr. Newman's deposition taken on December 13, 1993 was video-taped and played before the jury at trial on March 8, 1995. This was permitted pursuant to Pa.R.Civ.P. 4017.1 and 4020.

sponge is a foreign substance that cannot be tolerated by the body.

Based on this evidence, it was proper for the trial court to refuse to grant appellant judgment on this issue. The testimony of Dr. Newman, if believed by the jury, established that the appellant acted negligently in leaving the sponge in appellee's body, and that this negligence was a substantial factor in her subsequent pain and swelling. As such, there was sufficient evidence to let the jury decide the issue of appellant's negligence, and therefore the trial court did not err in denying appellant's request for judgment n.o.v.

Appellant also argues that he was entitled to judgment on the issue of informed consent. In particular, he argues that appellee failed to provide expert testimony regarding the necessity of consent to the surgery and the risks involved.

"The doctrine of informed consent declares that absent an emergency situation, medical treatment may not be imposed without the patient's informed consent." *In Re Fiori*, 543 Pa. 592, 601, 673 A.2d 905, 910 (1996).[7] If consent is not given, then there is a battery on the patient by the physician. *Sagala v. Tavares*, 367 Pa.Super. 573, 581, 533 A.2d 165, 169 (1987), *alloc. denied*, 518 Pa. 626, 541 A.2d 1138 (1988). The goal of the informed consent doctrine is to provide the patient with material information necessary to determine whether to proceed with the given procedure or to remain in the present condition. *Sinclair By Sinclair v. Block*, 534 Pa. 563, 570, 633 A.2d 1137, 1140 (1993). Thus, "[a] physician or surgeon need not disclose all known information." *Gouse v. Cassel*, 532 Pa. 197, 203, 615 A.2d 331, 334 (1992), and

7. In *Sinclair By Sinclair v. Block*, 534 Pa. 563, 633 A.2d 1137 (1993), the Supreme Court held that the doctrine of informed consent "protects the patient's right to make an informed choice as to whether to proceed with a **surgical or operative procedure.**" *Id.* at 569, 633 A.2d at 1140. *See Morgan v. McPhail*, 449 Pa.Super. 71, 672 A.2d 1359, *alloc. granted*, 546 Pa. 268, 684 A.2d 553 (1996) (recognizing *Sinclair* as authority but questioning the limitation of the informed consent doctrine to surgical and operative procedures). The back operation in this case clearly qualifies as a "surgical procedure."

he or she "is not required to give every patient a complete course in anatomy and to explain every risk, no matter how remote, before a consent [will] be valid." *Jeffries v. McCague,* 242 Pa.Super. 76, 85, 363 A.2d 1167, 1171 (1976).

■ In order for consent to be considered informed, it must be shown that:

the physician disclosed all those facts, risks and alternatives that a reasonable man in the situation which the physician knew or should have known to be the plaintiff's, would deem significant in making a decision to undergo the recommended treatment ... The physician is bound to disclose only those risks which a reasonable man would consider material to his decision whether or not to undergo treatment.

*Jozsa v. Hottenstein,* 364 Pa.Super. 469, 473, 528 A.2d 606, 607 (1987), *alloc. denied,* 518 Pa. 619, 541 A.2d 746 (1988) (citation omitted).

■ The determination of what is a "material risk" is a question for the jury. *Moure, supra.* In making that determination, "the jury must be supplied with expert information as to the nature of the harm attendant to the procedure, and the probability of that harm occurring." *Moure, supra,* at 405, 604 A.2d at 1008. "Thereafter, the jury must determine whether the type of harm and the probability of its occurrence is information which a reasonable patient would consider in deciding whether to undergo the medical procedure." *Id.* See generally *Festa v. Greenberg,* 354 Pa.Super. 346, 511 A.2d 1371 (1986), *alloc. denied,* 515 Pa. 580, 527 A.2d 541 (1987).

At trial, appellant, called by appellee as on cross-examination, testified that prior to the surgery, he did explain to appellee the risks and possible complications that could arise from the surgery.[8] However, while acknowledging that the leaving of a sponge in the patient was a possible risk of surgery, he did not inform appellee of this possibility because

---

8. In *Levy v. Jannetta,* 423 Pa.Super. 384, 621 A.2d 585 (1992), this Court found the requirement of expert testimony satisfied when the only "expert" testimony came from the defendant physician.

the risk was highly unlikely and was not one that he normally discussed with a patient. This was the only testimony offered by appellee on the issue of informed consent.

Thus, the appellant considered the possibility of leaving a sponge in a surgical cavity so remote as to not warrant a discussion. While appellant's opinion may be susceptible to challenge, it is not a challenge that can be mounted by lay witnesses, for without expert testimony as to the probability of the harm, it was impossible for the jury to determine whether such a risk was material. *See Festa, supra; Bearfield v. Hauch,* 407 Pa.Super. 624, 595 A.2d 1320 (1991). Since plaintiff did not produce expert testimony to contradict appellant's opinion of remoteness, there was no evidence to support a conclusion by the jury that appellant failed in his duty to fully inform the patient of the harm and material risks of the surgery. Therefore, appellant was entitled to judgment on the issue of informed consent.

■ Appellant's final contention is that the trial court erred in granting a new trial limited to the issue of liability only. We have found only one case involving the issue of whether a trial court can award a new trial solely on liability. In *Chiaverini v. Sewickley Valley Hospital,* 409 Pa.Super. 630, 598 A.2d 1021 (1991), the jury found the defendant hospital negligent, and awarded damages in the amount of $50,000; however, it did not find causing the plaintiff's harm. The trial court granted a new trial as to all issues but the appellant argued that the new trial should be limited to the issue of liability. This Court noted that a trial court has discretion to grant a new trial as to a governing new trials as to **damages** only:

> new trials may be limited to specific issues only when this procedure will be fair to both parties ... [A] lower court may grant a new trial, limited to the question of damages, **only** where (1) the question of liability is not intertwined with the question of damages, **and** (2) the issue of liability is either (a) not contested or (b) has been fairly determined so that no substantial complaint can be made with respect thereto.

*Id.* at 636, 598 A.2d at 1024, *quoting Gagliano v. Ditzler,* 437 Pa. 230, 232–33, 263 A.2d 319, 320 (1970) (emphasis in original) (citations omitted). From this standard, this Court concluded that a new trial could be limited to the issue of liability, but, analogizing to *Gagliano,* held that "a new trial could only be limited to the issue of liability if the issues of liability and damages are separable, and if the issue of damages was either uncontested or had been fairly determined." *Chiaverini, supra,* at 637, 598 A.2d at 1024. The Court then concluded that because the finding of no liability conflicted with the determination that damages were due, it could not be said that the issue of damages was readily separable from the issue of liability; "[o]n the contrary, it is particularly because we do not know which determination, the liability finding or the damage finding, is the one which we should give effect, that the verdict necessitates a new trial on both issues." *Id.* at 637, 598 A.2d at 1024.

Likewise in this case, a new trial cannot be given on liability only because it is clear that the issue of liability was inextricably intertwined with the issue of damages, and we do not know which jury finding should be given effect. As the jury's determination of liability directly conflicted with its determination of damages, it is impossible to conclude that one finding should be left undisturbed. Therefore, a new trial must be given as to both liability and damages.

CONCLUSION:

Appellee did not waive her right to challenge the inconsistent verdict. Appellant has waived any challenge to the contempt citation because he failed to raise such issue in his motion for post-trial relief. The trial court erred in not ruling on appellant's motion for judgment notwithstanding the verdict, and the court should have entered judgment in favor of appellant on the issue of informed consent. However, appellant was not entitled to judgment notwithstanding the verdict on the issue of appellant's malpractice. Finally, it was error for the court to award a new trial but limit it to the issue of liability only.

Consequently, the order of the Court of Common Pleas is reversed and the case is remanded to that court for a new trial consistent with this Opinion.

CAVANAUGH, J., concurs in the result.