## Gordon v. Bakare

C.P. of Dauphin County, no. 3445 S 1997.

*Carol Nelson Shepherd,* for plaintiff Gordon.
*Kendra D. McGuire,* for defendant Ayodeji O. Bakare M.D.
*Michael M. Badowski,* for defendant Jose Manjon M.D.
*Sarah W. Arosell,* for defendant Polyclinic Medical Center.

BEFORE: KLEINFELTER, LEWIS AND HOOVER, *JJ.*

HOOVER, *J.,* May 6, 1998—This matter is presently before the court on defendants Backare and Manjon's preliminary objections. Argument was heard before an en banc panel of this court and the relevant facts and procedural history are summarized as follows:

This medical malpractice action was filed on November 5, 1997. In the complaint, the plaintiffs allege that the defendants were negligent in failing to properly manage Mrs. Gordon's labor when signs of fetal distress were exhibited, that a cesarean section was not timely performed and that this negligent conduct caused severe injuries to the baby which caused his eventual death. In addition, as a result of the alleged negligent conduct, Mrs. Gordon was required to undergo a complete ab-

dominal hysterectomy because of her ruptured uterus. The complaint alleges negligence, lack of informed consent and negligent infliction of emotional distress. Preliminary objections were filed on behalf of the doctors which are now before the court for disposition.

First, the doctors contend that subparagraphs 57(a), (b), (c), (g), (r), (s), (t) and (u) are not pleaded with the required specificity in violation of *Connor v. Allegheny General Hospital,* 501 Pa. 306, 461 A.2d 600 (1983) and *Starr v. Myers,* 109 Dauph. 147 (1988). The objected to subparagraphs read as follows:

"(57) The injuries sustained by Donna Metz Gordon and her infant son, Sean Michael Gordon, were caused by the negligence and carelessness of the defendants Ayodeji O. Bakare M.D., Jose Manjon M.D. and Polyclinic Medical Center in the following particular respects:

"(a) failure appropriately and adequately to monitor Mrs. Gordon's labor;

"(b) failure to obtain appropriate and necessary additional diagnostic testing during the course of Mrs. Gordon's labor in order to evaluate her baby's well-being;

"(c) failure to obtain appropriate and necessary additional monitoring during the course of Mrs. Gordon's labor in order to evaluate her baby's well-being;

"(g) failure to obtain adequate and necessary medical and surgical consultations;

"(r) failure properly to take necessary and appropriate prophylactic steps to safeguard the patient and her unborn infant;

"(s) failure adequately to possess adequate medical skills, knowledge, experience and techniques for the proper treatment of Mrs. Gordon's condition;

"(t) failure properly to bring to bear such medical skills and knowledge as defendants then possessed in the treatment and care of plaintiff;

"(u) failure properly to conform to accepted standards of medical practice and care in the diagnosis, treatment and medical and surgical management of Mrs. Gordon's labor, monitoring and delivery; . . . ."

We have read the above averments in the context of the entire complaint and conclude that these allegations are sufficiently specific. Accordingly, the preliminary objections in this regard will be overruled.

The defendants next contend that the plaintiffs cannot set forth a cause of action for breach of informed consent in connection with the delivery of a child. The defendants request that paragraph 57(v) be stricken with prejudice.

The defendants rely on *Sinclair by Sinclair v. Block,* 534 Pa. 563, 633 A.2d 1137 (1993) in support of their arguments. In *Sinclair,* the issue before the court was whether the use of forceps during delivery was a surgical or operative procedure to which the informed consent doctrine applies. *Id.* at 567, 633 A.2d at 1139. In 1981, Mrs. Sinclair became pregnant and sought medical care from the defendants. *Id.* at 566, 633 A.2d at 1138. Near the end of her pregnancy, Mrs. Sinclair signed a consent form which outlined the procedures necessary to treat/diagnose her condition as being prenatal care, delivery care, postnatal care and/or cesarean section. *Id.* Mrs. Sinclair stated that she was never told verbally or in writing that the defendant may use forceps during the delivery of the baby. *Id.* During labor, the doctor observed that the baby was not proceeding through the birth canal in the usual position and attempted to deliver the baby by using forceps. *Id.* The use of forceps to facilitate natural delivery failed and the baby was

delivered by cesarean section. *Id.* After birth, it was discovered that the baby had areas of swelling and had suffered a fractured skull. *Id.* The Supreme Court determined that the use of forceps was not an operative procedure and they were used as a tool as an extension of the doctor's hands. *Id.* at 569, 633 A.2d at 1140. The court stated that the physician's use of forceps to facilitate natural delivery is not a distinct surgical or operative procedure and does not require additional consent to use forceps. *Id.* The court noted that during the course of natural delivery, as opposed to an operative or surgical procedure, the physician is present to assist nature and since labor is inevitable, the informed consent doctrine does not apply to the natural delivery process. *Id.* at 570-71, 633 A.2d at 1141.

The plaintiffs contend that the defendants' reliance on the *Sinclair* case is misplaced. In the present case, there were two options available to Mrs. Gordon, natural delivery and cesarean section. Her doctor never explored with her the benefits and problems associated with cesarean delivery given her history and the problems she was experiencing in the natural delivery process. Mrs. Gordon argues that she was denied the surgical alternative to natural delivery which would have perhaps prevented the injuries and ultimate death of the plaintiffs' child.

We agree with the plaintiffs and conclude that the cause of action for lack of informed consent should remain. The *Sinclair* case, although it involved the delivery of a baby, was not focused on the informed consent doctrine as it related to the delivery options. It merely involved the question as to whether the use of forceps during delivery was a surgical procedure.

The defendants next claim that the complaint fails to state a cause of action for the negligent infliction of emotional distress on behalf of Mr. Gordon. The

plaintiffs allege that Mr. Gordon is entitled to damages suffered as a result of witnessing the alleged negligent treatment of his wife, the resulting harm to his wife and son and for his inability to have any more children since his wife had to undergo a hysterectomy as a result of the birth.

A cause of action for the negligent infliction of emotional distress is viable if the plaintiff alleges that (1) the plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it; (2) the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident as contrasted with learning of the accident from others after its occurrence; (3) the plaintiff and the victim were closely related as contrasted with an absence of any relationship or the presence of only a distant relationship. *Turner v. Medical Center, Beaver, PA,* 454 Pa. Super. 645, 686 A.2d 830 (1996). A person who does not experience a sensory and contemporaneous observance of the injury does not state a cause of action for negligent infliction of emotional distress. *Id.* Mr. Gordon was present when the baby was delivered. Although he observed the delivery and saw what was or was not done in the delivery process, he did not have any contemporaneous knowledge that his son had health problems or that these problems were perhaps caused by the defendants. After the baby was delivered, he was soon made aware that there were complications with the baby's health and with his wife, and it was soon discovered that his wife needed a hysterectomy. It is not alleged that Mr. Gordon, when he observed the delivery process, knew that there were problems with the baby. It was after the baby was delivered that he was told of the problems. Therefore, we will sustain the defendants' preliminary objections to paragraph 63 and Count 4 of the complaint.

Defendant Manjon also argues that the complaint should be amended since the plaintiffs have failed to delineate the negligence of each defendant. We have reviewed the complaint and conclude that each paragraph sets forth what was or was not done by the defendants. Accordingly, we will overrule this preliminary objection and enter the following:

## ORDER

And now, May 6, 1998, the preliminary objections filed on behalf of the defendants are hereby overruled with the exception that the preliminary objections to paragraph 63 and Count 4 of the complaint are sustained and paragraph 63 and Count 4 are stricken from the complaint with prejudice. The defendants are directed to file an answer to the complaint within 20 days from the date of this order.