621 A.2d 585

**Carol Jay LEVY, Appellant,**

**v.**

**Peter J. JANNETTA, M.D., Howard Gendell, M.D. and Presbyterian University Hospital of Pittsburgh.**

Superior Court of Pennsylvania.

Argued Aug. 25, 1992.

Filed Dec. 31, 1992.

Reargument Denied April 2, 1993.

---

Fred S. Longer, Philadelphia, for appellant.

Edmund L. Olszewski, Jr., Pittsburgh, for appellees.

Before DEL SOLE, KELLY and BROSKY, JJ.

386

BROSKY, Judge.

This is an appeal from an order denying post-trial relief and affirming the grant of a non-suit in an informed consent case. Appellant raises one issue for our consideration, whether it was error to grant appellee's motion for non-suit where appellant introduced deposition testimony of the appellee/defendant physician that indicated that facial paralysis was a common complication associated with a microvascular decompression procedure, where she testified, and the doctor admitted, that he did not inform appellant of this risk and where appellant suffered a facial paralysis after the surgical procedure was completed? After considerable study of the various issues raised or implicated in this appeal we reverse the order denying post-trial motions and grant appellant a new trial.

On March 1, 1979, after suffering from a condition known as trigeminal neuralgia for many years, appellant sought medical evaluation from appellee Jannetta, a medical specialist in the field of cranial neurosurgery. Trigeminal neuralgia is a condition which results in the experiencing of severe pain in one or more facial areas associated with the fifth cranial nerve. Prior to meeting with Dr. Jannetta appellant had several surgical procedures performed in an effort to obtain relief from her facial pain. However, none of these provided any long term relief. Dr. Jannetta admitted appellant to Presbyterian University Hospital to consider performing a craniotomy and microvascular decompression of the fifth cranial nerve. Appellant ultimately had this surgery performed but afterwards experienced no relief from the facial pain. Furthermore, appellant experienced facial paralysis subsequent to the surgery.

Appellant filed suit against appellees and pursued a battery action on the theory of a lack of informed consent. Proceeding *pro se* appellant deposed Dr. Jannetta and others and ultimately proceeded to trial. Quite unusually appellant did not produce an expert witness retained by herself. Instead appellant called Dr. Jannetta in an apparent effort to establish the expert witness aspects of her case. During questioning Dr. Jannetta was asked if he told appellant of the risk of

suffering facial paralysis as a result of the surgery performed. Dr. Jannetta testified that he did not because at the time the surgery was performed he did not regard facial paralysis as a risk of the surgery appellant underwent. In response to Dr. Jannetta's answers, appellant produced a copy of Dr. Jannetta's deposition testimony after which the following exchanges, including reading from the deposition, took place:

Q. ... I had asked you if you could tell me what you told me about the surgery and your answer was: I invariably talked about the operation and what we planned to do and possible and major complications.

Question: What would those be?

And your answer was: Bleeding, infection, paralysis, strokes, loss of hearing of the ear, loss of coordination, facial paralysis.

. . . . .

Q. Do you recall your answer was: I can't recall. I probably discussed microvascular decompression and the risks thereafter?

A. I'm sure that's what it would have been.

Q. And the following question: What risks were they? And your answer was: the risks that I invariably talked about are death, stroke, bleeding, infection, facial palsy, lack of hearing, loss of hearing on that side, and numbness.

After appellant had rested her case appellees moved for a nonsuit arguing that appellant had failed to make a prima facie case. At the core of this argument was the contention that appellant had produced no expert testimony to establish that facial paralysis was a known risk of the surgery performed. Additionally, it was argued that the deposition testimony that seemingly acknowledged this risk, and upon which appellant was relying, could not be used by appellant to establish this element. The motion was granted and appellant filed a post-trial motion which was denied. This appeal followed.

In reaching its decision it appears that the lower court was of the opinion or belief that appellant could not use both Dr. Jannetta's deposition testimony and his testimony at trial to

establish the elements of the cause of action.[1] This appears crucial because Dr. Jannetta seemed to admit at trial that he did not inform appellant of the risk of facial paralysis while further indicating that it was not a risk associated with microvascular decompression at the time the surgery was performed. However, Dr. Jannetta's deposition testimony seems to acknowledge that it was a risk associated with the surgery at the time the surgery was performed. The disposition of appellant's challenge revolves around the resolution of two issues. One, whether appellant could rely upon the deposition testimony of Dr. Jannetta as expert testimony necessary in her case-in-chief; and, two, if so, whether the expert testimony and other testimony was sufficient to allow the case to go to the jury. We address these two issues generally, and in reverse order.

It is beyond dispute that medical expert testimony is necessary in an informed consent action to establish that the condition suffered was a known risk of a medical procedure at the time the procedure was performed. *Festa v. Greenberg*, 354 Pa.Super. 346, 511 A.2d 1371 (1986). Appellant obviously attempted to meet this requirement through the testimony of appellee Jannetta. However, appellant contends that at trial Dr. Jannetta's testimony differed from the testimony given during deposition. Consequently, appellant questioned Dr. Jannetta regarding his deposition testimony, as if to impeach him. It was during this questioning that Dr. Jannetta's deposition testimony was read. Fairly read, Dr. Jannetta's deposition testimony identifies facial paralysis as a "possible major and common complication" of the surgery appellant underwent. Although ideally a litigator would like to present much more solid and comprehensive expert testimony to make a prima facie case, our review of the law suggests that this

---

1. In actuality, it was not necessary that appellant use both the trial testimony and the deposition testimony of Dr. Jannetta. The deposition testimony ostensibly established that facial paralysis was a known risk of the surgery while the trial testimony did not. And while the trial testimony established that Dr. Jannetta did not inform appellant of the risk of facial paralysis, a necessary part of appellant's case, her own testimony established this fact as well.

commentary of Dr. Jannetta would be sufficient to allow the case to go to the jury.

In *Jozsa v. Hottenstein,* 364 Pa.Super. 469, 528 A.2d 606 (1987), we specifically addressed the minimum requirements to allow the case to go to the jury in an informed consent case. There we stated:

> The law is very clear that once expert medical testimony establishes that there was a risk of any nature to the patient that he or she was not informed of, and after surgery the patient suffers from that undisclosed risk, it is for the jury to decide whether the omission was material to an informed consent.
>
> *Festa* holds that expert testimony is mandatory to establish existence of risks, existence of alternative methods of treatment and existence of risks attendant with such alternatives. It *does not hold that expert testimony must establish all of the above* before the question of whether there was an informed consent can go to the jury. We emphasize that once expert testimony establishes the existence of an undisclosed risk of a recommended medical procedure (or any one of the above-mentioned factors), it is the role of the jury to decide whether that type of harm if it occurs, is a risk which a reasonable patient would consider in deciding on whether to undergo or reject the procedure.

*Id.,* 364 Pa.Super. at 474, 528 A.2d at 608. In light of this excerpt from *Jozsa* we must conclude that Dr. Jannetta's identification of facial paralysis as a possible major and common complication would satisfy the expert testimony requirement to the extent the deposition statement can be considered competent evidence in appellant's trial. Not surprisingly, appellees argue that it cannot.

Appellees assert that Dr. Jannetta's deposition testimony cannot be used to satisfy the expert testimony requirement for a variety of reasons. However, an argument can clearly be made that the deposition testimony would be admissible against appellees. For example, Pennsylvania Rule of Civil Procedure 4020, regarding the use of deposition testimony, states, in relevant part:

> (a) At the trial, any part or all of a deposition, ... may be used against any party who was present ... at the taking of the deposition ... in accordance with any one of the following provisions:

> (2) The deposition of a party ... may be used by an adverse party for any purpose.

Thus, Rule 4020 would appear to allow the deposition testimony of Dr. Jannetta, a party to this action, "for any purpose." Additionally, it is now firmly established that prior inconsistent statements of a witness can be used as substantive evidence. *Commonwealth v. Brady*, 510 Pa. 123, 507 A.2d 66 (1986). We have little difficulty in concluding that Dr. Jannetta's testimony at deposition was different than, or inconsistent with, the testimony offered at trial. Indeed, Dr. Jannetta asserted at trial that facial paralysis was not a known possible consequence of microvascular decompression at the time the surgery was performed while he identified it as such at deposition. In contrast to these arguments for considering the deposition testimony, appellees offer a number of counter arguments.

Appellees first assert that the deposition testimony cannot be utilized because it was equivocal and vague. They point to several of Dr. Jannetta's comments made during the deposition that he could not recall exactly what he discussed with appellant and argue that these comments make the testimony less definite than is required of expert testimony. This argument misses its mark. It is not essential for appellant's case that Dr. Jannetta remember what he discussed with appellant just before the surgery was performed. In fact, appellant quite specifically testified to what Dr. Jannetta did and did not tell her regarding the surgery. The importance to appellant is that Dr. Jannetta, or another medical expert, identify facial paralysis as a risk of the surgery appellant underwent. Dr. Jannetta did this at deposition. Dr. Jannetta indicated that he invariably talked about the possible major and common complications of the planned surgery. He was then asked what those would be and one of his responses was facial paralysis. He also stated that the risks he invariably talked about

regarding microvascular decompression were death, stroke, bleeding, infection, facial palsy, lack of hearing, loss of hearing on that side and numbness. Consequently, twice during deposition Dr. Jannetta identified facial paralysis/palsy as a risk of the surgery appellant underwent. There is nothing vague or indefinite about those responses.

Appellees also argue that the deposition testimony was not made a part of the record and therefore was not part of the reviewable substantive evidence of the case. It is true that appellant did not formally introduce the entire deposition into evidence, although, appellant probably would have been wise to do so. However, we cannot conclude that such an omission is fatal to appellant's case. Appellant, for the most part, is relying only upon the small excerpts of testimony detailed above. These were read to Dr. Jannetta, as prior inconsistent statements, in impeachment type fashion. Since prior inconsistent statements can be used as substantive evidence, it is only necessary that appellant prove their existence. Although this could have been accomplished by introducing the deposition transcript into evidence, since appellant was confronting Dr. Jannetta with these statements it is sufficient if Dr. Jannetta acknowledged making them. *Commonwealth v. London*, 461 Pa. 566, 337 A.2d 549 (1975). We conclude that he did acknowledge them.

At trial, appellant began the entire line of questioning by asking Dr. Jannetta if he remembered being deposed by appellant in January of 1989, to which he responded yes. After the excerpt from the deposition was read Dr. Jannetta was asked if he recalled that conversation. It appears to us that this particular inquiry is somewhat confusing or vague as it is not clear whether the conversation referred to by appellant was the exchange at deposition or the conversation prior to the surgery. Dr. Jannetta's response appears to refer to the conversation prior to surgery. However, he then responds by stating that appellant asked him a general question and "I gave you a general answer." This comment must be construed to regard the answer given at the deposition. Consequently, a fair reading of the trial transcript leads to the

conclusion that Dr. Jannetta acknowledged having made that statement at deposition and that the statement was properly available for use as substantive evidence that facial paralysis/palsy was a known risk of microvascular decompression surgery. We must conclude, therefore, that it was error to grant appellees' motion for non-suit. Appellant was entitled to have her case go to the jury on the informed consent count.

We agree with appellees, however, that the present appeal appears limited to the viability of the informed consent cause of action. Although proffering a breach of contract cause of action in relation to Dr. Jannetta's alleged guarantee that appellant could not suffer facial paralysis as a result of the surgery performed, appellant's statement of the question involved does not fairly raise an issue with regard to this cause of action. Furthermore, a review of appellant's motion for new trial does not seem to raise an issue regarding the granting of a non-suit on this count. Consequently, we must conclude that appellant has abandoned this cause of action. See, Pa.R.A.P. 2116(a) and *Federal Kemper Insurance Co. v. Derr,* 386 Pa.Super. 382, 563 A.2d 118 (1989).

For the above reasons we reverse the order denying appellant's motion for a new trial with regard to the informed consent cause of action. The case is remanded for a new trial.

Order reversed, case remanded for a new trial.

DEL SOLE, J., notes his dissent.