# Shapona v. Gallagher

C.P. of Mercer County, no. 1994-939.

*John E. Quinn,* for plaintiff.
*Korry Alden Greene,* for defendant.

DOBSON, *J.,* June 27, 2001—The matter before this court for disposition is defendant John P. Gallagher M.D.'s motion for summary judgment. For the reasons hereinafter set forth, Dr. Gallagher's motion will be denied.

Pennsylvania Rule of Civil Procedure 1035.2 provides that any party may move for summary judgment in whole or in part as a matter of law:

"(1) whenever there is no genuine issue of material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to the jury." Pa.R.C.P. 1035.2.

A court may grant a motion for summary judgment only where the right is clear and free from doubt. *Marks v. Tasman,* 527 Pa. 132, 134, 589 A.2d 205, 206 (1991). "The record must be viewed in the light most favorable to the non-moving party, and all doubts as to the exis-

tence of a genuine issue of material fact must be resolved against the moving party." *Id.* at 135, 589 A.2d at 206.

The non-moving party "must adduce sufficient evidence on [all] issue[s] essential to his case on which he bears the burden of proof such that a jury could return a verdict in his favor. Failure to adduce this evidence establishes that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Ertel v. Patriot-News Co.,* 544 Pa. 93, 101-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996).

Viewed in the light most favorable to the non-moving party, the facts are summarized as follows. Plaintiff, Carrie L. Shapona, had been diagnosed to be suffering from total vaginal prolapse. On March 18, 1992, Dr. Gallagher performed a surgery on Shapona to repair ligaments at the top of her vagina. Shapona claims that Dr. Gallagher never explained her condition to her, the details of the surgical procedure, or the risks, complications and alternatives involved with the surgical procedure prior to the surgery. Shapona allegedly suffered urinary incontinence and a loss of her vaginal depth following the surgery.

Shapona's complaint alleges that Dr. Gallagher failed to obtain informed consent for the surgical procedure, and was otherwise negligent in the performance of the surgical procedure. On October 2, 2000, a consent order of court was entered prohibiting Shapona from pursuing any cause of action against Dr. Gallagher sounding in negligence. The order of October 2, 2000 also required Shapona to provide an expert report on the issue of informed consent within 30 days of that date. Furthermore, the order provided that the failure to supply an expert

report on the issue of informed consent would result in Shapona being precluded from presenting expert testimony at trial.

On November 13, 2000, Dr. Gallagher filed a motion to preclude expert testimony for violation of the October 2, 2000 order for failure to produce an expert report on the theory of informed consent. A hearing for this motion was scheduled for February 5, 2001. On December 15, 2001, Shapona's counsel forwarded to Dr. Gallagher's counsel a letter from Andrew M. London M.D. in compliance with the order of October 2, 2000.

On February 5, 2001, this court heard Dr. Gallagher's motion to preclude expert testimony for violation of the order of October 2, 2000 and ordered that Shapona was limited to the report of Dr. London for the purposes of presenting expert testimony at trial. Dr. London's report provides as follows:

"Dear Ms. Vollberg:

"Thank you for asking me to review the records of Carrie Shapona. I have reviewed all of the records that you sent me. The records of her surgery by Dr. Gallagher are the most important. I can find neither deviation from the standard of care nor any deviation from the surgical procedure.

"Ms. Shapona unfortunately had a complication from the procedure. This type of problem is a known complication of the type of surgery that she had and there was no evidence of negligence.

"I am sorry that she is unhappy with her outcome, but there is no evidence of any breach in medicine that I can find.

"Thank you and if I can be of any further service, please do not hesitate to contact me.

"Sincerely,

"Andrew M. London"

Dr. Gallagher filed this motion for summary judgment on the basis that Dr. London's expert report is legally insufficient to set forth an opinion to support a claim for lack of informed consent.

Shapona, however, further avers that Dr. London's report along with the general consent form that Shapona signed at the time of her surgery and her deposition testimony taken as a whole support a finding that there are genuine issues of material fact regarding the lack of informed consent.

"It is well-established in Pennsylvania that in informed consent cases, expert testimony is not necessary to establish the medical community's standard of disclosure." *Festa v. Greenberg,* 354 Pa. Super. 346, 355, 511 A.2d 1371, 1376 (1986). "Although expert medical testimony is not mandatory to set forth the scope of a physician's duty to disclose material risks to a patient under the reasonable man standard, . . . *such testimony is required to establish the existence of risks* in a specific medical procedure, *the existence of alternative methods of treatment* and the *existence of risks attendant with such alternatives." Id.* at 356, 511 A.2d at 1376. (emphasis in original) Therefore, expert testimony is generally required in informed consent cases to establish the risks and alternatives presented by a proposed surgical procedure. *Cosom v. Marcotte,* 760 A.2d 886, 890 (Pa. Super. 2000).

Dr. Gallagher asserts that Shapona cannot sustain her prima facie burden of production because Dr. London's

letter fails in all respects to address the legally required standards set forth in the *Festa* case because Dr. London's letter does not establish the existence of risks, the existence of alternative methods of treatment, and the existence of risks attendant with such alternatives. *Festa,* 354 Pa. Super. at 356, 511 A.2d at 1376. Furthermore, Dr. Gallagher asserts that Dr. London's letter utterly fails to support Shapona's theory of recovery or address any of the factors set forth in *Festa,* and since Shapona is bound by Dr. London's letter she cannot meet her burden of proof at the time of trial.

Shapona asserts that Dr. London's report meets the requirements set forth in the *Festa* decision in that Dr. London's report provides "Ms. Shapona unfortunately had a complication from the procedure. This type of problem is a known complication of the type of surgery that she had and there was no evidence of negligence." Shapona contends that the report meets the requirements for an expert report because it gives an opinion as to what the known complications of the surgery are. Furthermore, Shapona asserts that Dr. Gallagher never disclosed the risks, complications or alternative treatments to her, prior to her surgery and the general consent form that she signed did not contain any information concerning what procedures were going to be performed on her when she signed it. Therefore, Shapona contends, that the expert report along with the general consent forms and the testimony concerning the lack of informed consent are legally sufficient for her to meet her burden of proof as to the lack of informed consent.

Although *Festa* and the other cases cited by Dr. Gallagher provide that expert testimony is required to

discuss the risks and alternatives, these cases do not discuss the extent to which the risks and alternatives need to be discussed. The question in this case is whether Dr. London's report is legally sufficient to establish such requirements.

This court finds the cases of *Jozsa v. Hottenstein M.D.,* 364 Pa. Super. 469, 528 A.2d 606 (1987), *appeal denied,* 518 Pa. 619, 541 A.2d 746 (1988), and *Levy v. Jannetta,* 423 Pa. Super. 384, 621 A.2d 585 (1992), *appeal denied,* 536 Pa. 627, 637 A.2d 287 (1993), to be dispositive.

In *Jozsa,* the plaintiffs brought an action against the defendant for performing surgery without having secured informed consent from his patient because the defendant did not advise the plaintiff of any risks or possible complications prior to performing carpal tunnel surgery. *Jozsa,* 364 Pa. Super. at 471, 528 A.2d at 607. The plaintiff, based upon the defendant's explanation that the surgery could alleviate her neck pain, agreed to have the surgery. *Id.* at 472, 528 A.2d at 607. Following the surgery, the plaintiff experienced extensive postoperative complications including scar tissue formation of the median nerve, which ultimately necessitated corrective surgery. The defendant admitted that the scar tissue formation was a complication and the plaintiff's subsequent treating physician testified that the percentage of recurrence for carpal tunnel was 4-5 percent. *Id.*

While citing the portion of the decision in *Festa,* requiring in informed consent cases "medical testimony is 'necessary to establish the existence, magnitude and other relevant scientific characteristics of the risks of a recommended medical procedure and viable alternatives,' " *id.*

at 473, 528 A.2d at 607, the *Jozsa* court held: "[t]he law is very clear that once expert medical testimony establishes that there was a risk of any nature to the patient that he or she was not informed of, and after surgery the patient suffers from that undisclosed risk, it is for the jury to decide whether the omission was material to an informed consent." *Id.* at 474, 528 A.2d at 608.

The *Jozsa* court distinguished its decision from the holding in *Festa* in the following manner:

"*Festa* holds that expert testimony is mandatory to establish existence of risks, existence of alternative methods of treatment and existence of risks attendant with such alternatives. It does not hold that expert testimony must establish all of the above before the question of whether there was an informed consent can go to the jury. We emphasize that once expert testimony establishes the existence of an undisclosed risk of a recommended medical procedure (or of any of the above-mentioned factors) it is the role of the jury to decide whether that type of harm if it occurs, is a risk which a reasonable patient would consider in deciding on whether to undergo or reject the procedure.

"Therefore, since the record in this case supports the appellants' [plaintiffs'] position that the appellee-doctor [defendant] did not inform them of the medically attested to recurrence rate of 4-5 percent, which was a known risk, the appellants' [plaintiffs'] case should have been permitted to go to the jury. The trier of fact has to be the arbiter of what constitutes a material risk for the patient." *Jozsa,* 364 Pa. Super. at 474, 528 A.2d at 608.

In *Levy,* the plaintiff sought a medical evaluation from the defendant-doctor because the plaintiff suffered from

a condition known as trigeminal neuralgia which results in the experiencing of severe pain in one or more facial areas associated with the fifth cranial nerve. *Levy,* 423 Pa. Super. 384, 386, 621 A.2d 585, 586 (1992). The defendant performed a craniotomy and microvascular decompression of the fifth cranial nerve surgery on the plaintiff, but the plaintiff experienced no relief from the facial pain following the surgery and furthermore experienced facial paralysis subsequent to the surgery. *Id.* The plaintiff filed suit against the defendant on the theory of a lack of informed consent.

During the trial, the plaintiff did not produce any expert witness retained by herself, but rather called the defendant in an apparent effort to establish the expert witness aspects of her case. *Id.* The plaintiff questioned the defendant if he told the plaintiff of the risk of suffering facial paralysis as a result of the surgery, and the defendant testified that he did not because at the time the surgery was performed he did not regard facial paralysis as a risk of the surgery the plaintiff underwent. *Id.* at 387, 621 A.2d at 586. In response to the defendant's answers, the plaintiff produced a copy of the defendant's deposition testimony where the defendant testified that facial paralysis was a possible complication and risk of the surgery. *Id.*

The defendant moved for a nonsuit arguing that the plaintiff had failed to make a prima facie case since she had produced no expert testimony to establish that facial paralysis was a known risk of the surgery performed. *Id.* The *Levy* trial court granted the defendant's motion for nonsuit, however, the Superior Court reversed the trial court's decision. The *Levy* court cited with approval the

language in *Festa* that "[i]t is beyond dispute that medical expert testimony is necessary in an informed consent action to establish that the condition suffered was a known risk of a medical procedure at the time the procedure was performed." *Id.* at 388, 621 A.2d at 587. The *Levy* court, however, also found the *Jozsa* court's interpretation of *Festa* to be controlling. It stated:

"*Festa* holds that expert testimony is mandatory to establish existence of risks, existence of alternative methods of treatment and existence of risks attendant with such alternatives. *It does not hold that expert testimony must establish all of the above* before the question of whether there was an informed consent can go to the jury." *Levy,* 423 Pa. Super. at 389, 621 A.2d at 587. (emphasis in original)

Applying the holding in *Jozsa,* the *Levy* court found "that the defendant's identification of facial paralysis as a possible major and common complication would satisfy the expert testimony requirement to the extent the deposition statement can be considered competent evidence in appellant's [plaintiff's] trial." *Id.*

It is clear the holdings in *Festa* and *Jozsa* are in conflict. While *Jozsa* professes to be in accord with *Festa,* it is not. Since the Superior Court decisions in *Jozsa* and *Levy* are the most recent decisions entered by the Superior Court ruling on the extent of the expert testimony that is required to sustain the prima facie case, this court finds those decisions to be dispositive and controlling.[1] It is up to the Superior Court to resolve this conflict.

---

1. This court does note the decision of *Pavoni v. Magee,* 29 Phila. 41 (1994). In that case, the Court of Common Pleas of Philadelphia County held "In order to establish a prima facie showing of informed

In this case, Dr. London's report provides "Ms. Shapona unfortunately had a complication from the procedure. This type of complication is a known complication of the type of surgery that she had and there was no evidence of negligence." Hence, Dr. London's report is sufficient to allow the case to go to the jury.

The question of whether Dr. Gallagher disclosed these risks with Shapona prior to the surgery and if such risks were of a nature that a reasonable person would consider them to be material are questions for the trier of fact. Consequently, Dr. Gallagher's motion for summary judgment must be denied.

Hence, this order:

## ORDER

And now, June 27, 2001, it is hereby ordered that defendant John P. Gallagher M.D.'s motion for summary judgment is denied.

---

consent the plaintiffs must further demonstrate the rate or probability of that type of harm occurring. It is with this information that a trier of fact can decide whether the risk is 'material' to an informed consent." The *Pavoni* court held that the plaintiff failed to carry the prima facie burden to set forth the magnitude and rate of the risks to the bladder during a hysterectomy procedure when the doctor testified that the percentage of probability of injury to the bladder was low and such injuries occurred in a small number of cases. The *Pavoni* court held "[w]hile *Levy v. Janetta* suggests that something less than 'solid and comprehensive expert testimony' is adequate to make a prima facie case, it is difficult to believe that Dr. Magee's [defendant's] testimony that the risk is 'low,' is sufficient to allow this case to go to the jury." The Superior Court affirmed the trial court decision in *Pavoni; Pavoni v. Magee,* 446 Pa. Super. 690, 667 A.2d 430 (1995); however, it did so without publishing an opinion. Therefore, the Superior Court's decision in the *Pavoni* case cannot be considered as precedent.